### William Taussig v. Anderson County Tobacco Growers' Company.

#### Decided April 7, 1910.

**Trial—Inspection of Subject of Controversy.**

When, during the trial of a case without a jury, the trial judge, at the request of the defendant, repairs to the place where the subject-matter of controversy is situated (in this instance a crop of tobacco in a warehouse), and examines the same in person and then and there hears the statements of witnesses concerning the tobacco, its identity, quality and condition, the appellate court can not say that the evidence thus furnished the trial judge by the defendant himself, much of which could not be and was not pretended to be incorporated in the record, was not sufficient to support a finding against the defendant.

Appeal from the District Court of Anderson County. Tried below before Hon. B. H. Gardner.

*King & Morris,* for appellant.

*Campbell, Sewell & Strickland,* for appellee.

REESE, Associate Justice.—The Anderson County Tobacco Growers' Company, a corporation, instituted this suit against William Taussig in the District Court to recover damages, laid at $1,785.60, for breach of contract for the purchase of certain tobacco. By the terms of the contract the tobacco company was to sell and deliver, and Taussig was to take and pay for at fifty cents per pound, the shade-grown crop of the plaintiff for the year 1908 on the "Jap Farm" of fifteen acres. The contract contained the following provisions:

"The said company shall deliver said crop or crops in good merchantable condition, free from damage such as pole-burn or mould, which, together with trash, is to be thrown out at the time of delivery.

"The said company agrees to use the usual care to keep off worms, both bud and horn."

Plaintiff alleged delivery on its part in accordance with the terms of the contract and refusal of defendant to accept. The amount of tobacco so delivered or tendered was alleged to be 11,160 pounds.

Defendant answered by general demurrer, general denial, and, by special answer, set out in detail that the tobacco tendered by plaintiff was not merchantable tobacco, such as called for in the contract, and that plaintiff had not complied with the terms of said contract.

The case was tried without a jury, resulting in a judgment for plaintiff for $1,506.60, from which defendant appeals. The trial court did not file conclusions of fact and law.

There was no question of the execution of the contract, and the undisputed evidence showed that, upon the refusal of appellant to receive the tobacco, appellee sold it for thirty-four cents per pound, which was the best price obtainable. The evidence also authorizes the conclusion that the amount of merchantable tobacco was sufficient, at sixteen cents per pound, being the difference between contract price and the price at which it was sold, to authorize the judgment for $1,506.60.

The sharply contested issues were, whether the tobacco was such as provided for by the terms of the contract, and whether appellee had complied with the terms of the contract in making or tendering delivery. We find that the evidence is sufficient to support the judgment on both issues.

Appellant presents two assignments of error, as follows:

"The court erred in rendering a judgment in favor of the plaintiff for any amount whatever and in failing to render a judgment in favor of the defendant, because the contract sued on contained the following provisions:

" 'The said company shall deliver said crops in good merchantable condition, free from damage such as pole-burn or mould, which, together with trash, is to be thrown out at the time of delivery.

" 'The said company agrees to use the usual care to keep off worms, both bud and horn.'

"Under these provisions of the contract it was the duty of the plaintiff to separate said tobacco by throwing out the trash and worm-eaten and damaged tobacco, and tender only good merchantable tobacco, as provided in said contract. The undisputed evidence shows that plaintiff company did not do this, but undertook to deliver it in bulk, at the contract price—trash, damaged tobacco and all."

"The judgment of the court is contrary to the law and evidence in this: The plaintiff based its cause of action on a written contract, and could only recover upon showing that it complied with said contract and that defendant breached said contract, but the undisputed evidence shows that plaintiff did not comply with said contract, but breached it by failing to tender tobacco that was in good merchantable condition and free from pole-burn, mould, trash and other damaged tobacco, as it had agreed to do under its contract."

It was proven that in transactions of this kind it was customary to make delivery at the barns of the seller. The evidence is sufficient to show that when Smith, the president of appellee company, made the offer of delivery to appellant, he refused to receive the tobacco, but

that afterwards his agent, Weinberg, offered to go through the lot with Smith, separate it and assort it, so as to divide the good from the bad, and to take all of the merchantable, shade-grown tobacco that came up to the contract, but this offer was coupled with the condition that the tobacco was first to be sweated, which was a condition not provided for in the contract.

The statement of facts shows that during the trial, "at the request of counsel for defendant, the judge of the court, accompanied by two tobacco experts, witnesses Olsen and Berryman, and the witness Weinberg, agent and manager for defendant, visited the tobacco warehouse of defendant where the crop in controversy was stored and being handled, and examined in person the tobacco pointed out to them by Weinberg as the tobacco purchased from plaintiff concerning which this suit arose, and it was agreed that the court should take into consideration, in determining the issues in this cause, what he saw and observed as to the condition of said tobacco, and also all that was said by all the witnesses present in said warehouse in answer to questions by the court or otherwise concerning the tobacco, its identity, quality and condition."

What the court saw and heard at the warehouse, together with the testimony of witnesses heard in the regular way, seems to have been sufficient to satisfy the court that the tobacco was of the kind and quality provided for in the contract, and that appellant had no sufficient ground for his refusal to receive and pay for it. It is very obvious that this court can not say that the evidence thus furnished the trial court by appellant himself, much of which could not be, and is not pretended to be, incorporated in the record, was not sufficient to authorize such conclusion.

The assignments of error present no grounds for reversing the judgment, which is accordingly affirmed, but without damages as prayed by appellee.

*Affirmed.*

Writ of error refused.